UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

----------------------------------------------------------------------X
BAYSIDE WELLNESS PHYSICAL THERAPY P.C. et al.,

                                 Plaintiffs,

-against-

DOUBLE WHY DESIGN, INC. et al.,

                                 Defendants.
----------------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-cv-03842 (JMA) (ST)

**FILED**
**CLERK**

2/11/2025 10:49 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Plaintiffs Bayside Wellness Physical Therapy, P.C. ("Bayside") and Naon Physical Therapy P.C. ("Naon," and collectively, "Plaintiffs") allege claims against Defendants Double Why Design, Inc. ("Double Why"), Young Jun Youn ("Mr. Youn"), Barbara Mangibin ("Ms. Mangibin"), Gabriel & Moroff, P.C. ("G&M"), John Does (1-10), Jane Does (1-10), and ABC Corporations (1-10) (collectively, "Defendants") under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and New York common law. This case arises from defendants' alleged scheme to prepare fraudulent documents and open fraudulent bank accounts in plaintiffs' names to convert check payments owed to plaintiffs. Defendants Double Why, Mr. Youn, and Ms. Mangibin moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 44, 46.) For the following reasons, their motions are GRANTED and the case is DISMISSED.

                              **I.     BACKGROUND[1]**

Jessie Kim ("Ms. Kim") is a physical therapist licensed in New York and the sole owner of plaintiffs Bayside and Naon, corporations that specialize in physical therapy treatments.

---

[1] The facts set forth in this Opinion are drawn from plaintiffs' Amended Complaint, (ECF No. 39 ("Am. Compl.")), plaintiffs' Initial Complaint (ECF No. 1 ("Compl.")), and the parties' submissions in connection with defendants' motions to dismiss. For ease of reference, the Court refers to defendants Double Why and Mr. Youn's motion to

(Am. Compl. ¶ 16.) Bayside used to sublease an office from Gaon Acupuncture, P.C., a corporation co-owned by Mr. Youn and Ms. Mangibin.[2] (Id. ¶¶ 4, 9, 16, 17.) Ms. Kim, on behalf of Bayside and Naon, retained defendant G&M "to perform legal recovery and collection of no-fault insurance payments concerning physical therapy services." (Id. ¶ 18.) G&M is a law firm that provides no-fault insurance arbitrations to recover and collect payments for professional providers such as physical therapists. (Id. ¶ 10.) Mr. Youn referred Ms. Kim to G&M based on Mr. Youn's engagement of G&M with respect to various businesses that Mr. Youn owns. (Id. ¶ 19.)

Beginning in November 2021, G&M collected no-fault insurance payments on behalf of Bayside and Naon but did not turn them over. (Id. ¶ 22.) In January 2022, defendants created two fraudulent documents that Ms. Mangibin signed, which purported to transfer ownership of Bayside and Naon from Ms. Kim to Ms. Mangibin for a sum of ten thousand dollars each. (Id. ¶¶ 23-25.) Ms. Kim never agreed to sell Bayside or Naon and never signed any agreement transferring plaintiffs' corporate shares. (Id. ¶ 21.)

In March 2022, defendants sent a letter signed by Ms. Mangibin to the New York State Department of Education, falsely stating that Naon's licensee was changed and requesting that Ms. Kim's name be replaced with Ms. Mangibin's name as Naon's licensee. (Id. ¶ 26.)

In April 2022, defendants opened bank accounts with New Millenium Bank under the names of Naon and Bayside. (Id. ¶ 27.) On April 20, 2022, defendants prepared a written directive signed by Double Why and Ms. Mangibin as the purported owner of Bayside, which directed G&M to pay all money collected by G&M on behalf of Bayside to Double Why. (Id. ¶ 28.) Double Why

---

dismiss as "Defs.' Br." (ECF No. 44-2) and to plaintiffs' opposition brief as "Pls.' Opp." (ECF No. 44-7). Since Ms. Mangibin's motion to dismiss advances identical arguments to those set forth in Double Why and Mr. Youn's motion to dismiss, the Court will refer solely to Double Why and Mr. Youn's motion to dismiss.

[2] Plaintiffs no longer share this office space with the Defendants. (Am. Compl. ¶¶ 4,5, 37.)

is a corporation with a certificate of incorporation filed in New York, and plaintiffs allege that Mr. Youn has a financial interest in Double Why or otherwise owes Double Why money and receives a financial benefit for payments made to Double Why. (Id. ¶ 28.)  Plaintiffs allege that, upon information and belief, defendants prepared the same written directive with respect to Naon, thereby directing G&M to pay all monies collected by G&M, on behalf of Naon, to Double Why. (Id.)

Ms. Kim never authorized or directed G&M to turn over money collected on behalf of plaintiffs to Double Why, or any other entity. (Id. ¶ 29.)  In October 2022, Ms. Kim learned that G&M had been issuing money belonging to plaintiffs to Double Why and demanded that G&M refrain from any further unauthorized diversion of plaintiffs' funds. (Id. ¶ 31.)  G&M stopped releasing escrow funds to Double Why after receiving plaintiffs' demand letter in October 2022. (Compl. ¶ 36.)  Additionally, the bank accounts opened with New Millenium Bank under the names of Naon and Bayside were closed by New Millenium Bank after Ms. Kim reported that they were fraudulent accounts. (Compl. ¶¶ 44-46.)

G&M diverted checks to Double Why for sums belonging to Bayside in an amount "no less than $25,384.55." (Id. ¶ 32.)  Additionally, G&M diverted checks to Double Why for sums belonging to Naon in an amount "no less than $14,448.76." (Id. ¶ 33.)  G&M claims to be holding no less than $35,904.98 on behalf of Bayside, and no less than $13,690.54 on behalf of Naon, which sums G&M allegedly refuses to turn over to plaintiffs.[3] (Id. ¶ 35.)

Lastly, in January 2022 and August 2022, Mr. Youn and Ms. Mangibin stole an unspecified number of insurance checks that were mailed to Bayside's office, which was located in a shared

---

[3] Defendants' motion to dismiss notes that as alleged in plaintiffs' initial complaint, G&M stopped releasing escrow funds to Double Why after receiving plaintiffs' demand letter in October 2022. (Defs.' Br. at 14; Compl. ¶ 36.) Furthermore, defendants note that G&M is currently holding the funds and not releasing them "due to the controversy over who is entitled to the funds." (Defs.' Br. at 14.)

space with Gaon Acupuncture LLC, a company owned by Mr. Youn. [4] (Id. ¶ 37.) The insurance checks were deposited in the New Millennium Bank account opened by Ms. Mangibin under the name of Bayside. (Id. ¶ 38.) Ms. Kim never authorized anyone to open these bank accounts, and Bayside never received the proceeds of these insurance checks. (Id. ¶¶ 39-40.) In November 2023, Ms. Kim allegedly received a verification form concerning treatment allegedly made by Naon which she did not perform nor authorize. (Id. ¶ 45.)

Plaintiffs commenced this action on May 23, 2023. (See ECF No. 1.) Plaintiffs filed an amended complaint on November 24, 2023, alleging that defendants acted as an association-in-fact enterprise to commit unlawful acts consisting of the preparation of fraudulent documents, mail fraud, and the opening of two fraudulent bank accounts with New Millenium Bank in plaintiffs' names. (Am. Compl. ¶ 2.) The purpose of the alleged enterprise was to divert money belonging to plaintiffs to Double Why. (Id.)

## II.     LEGAL STANDARDS

### A.     Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Courts evaluate motions under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). That standard requires the Court to accept as true all well-pled factual allegations in the Amended Complaint and consider documents attached to that pleading, materials incorporated by reference in or integral to that pleading, and matters of which the court may take judicial notice. See Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023). The Court

---

[4] Plaintiffs' initial complaint alleged that the checks stolen in January and August of 2022 amounted to $2,521.20. (Compl. ¶¶ 42, 65.)

need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements. See, e.g., In re Facebook, Inc., IPO Derivative Litig., 797 F.3d 148, 159 (2d Cir. 2015). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 664; see also id. at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Determining whether the Amended Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 664.

**B.     RICO Claims**

The civil RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." In order to establish a claim for violation of this section, "a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quotation marks omitted).

The civil RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1651(5). In order to establish a pattern of racketeering activity, a plaintiff must show "that the predicate acts of racketeering activity by a defendant are 'related, *and* that they amount to or pose a threat of continued criminal activity.'" Cofacredit, 187 F.3d at 242 (citing H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)) (emphasis in original). In other words, a plaintiff must show both relatedness and

5

continuity. The continuity requirement can be satisfied by showing either a "closed-ended" or an "open-ended" pattern of racketeering activity. See id.

In order to prove closed-ended continuity, a plaintiff must demonstrate "a series of related predicates extending over a substantial period of time." Id. (quoting H.J., Inc., 492 U.S. at 242). The Second Circuit has repeatedly maintained that close-ended continuity is "primarily a temporal concept," id., though there are other "non-dispositive factors" that courts consider when determining if there is closed-ended continuity, including "the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 467 (2d Cir. 1995). Since the Supreme Court decided H.J. Inc., the Second Circuit has "never held a period of less than two years to constitute a substantial period of time." Cofacredit, 187 F.3d at 242 (internal quotation marks omitted). The period for evaluating continuity "is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008).

In order to prove open-ended continuity, a plaintiff "need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, 187 F.3d at 242 (citation omitted).

Courts have cautioned that RICO is as "an unusually potent weapon—the litigation equivalent of a thermonuclear device." Halvorssen v. Simpson, No. 18-CV-2683, 2019 WL 4023561, at *3 (E.D.N.Y. Aug. 26, 2019) (quoting Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted), aff'd, 113 F.3d 1229 (2d Cir. 1997)). Given the "powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO" due to "the allure of treble damages, attorney's fees, and federal

6

jurisdiction," courts must "scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." Holmes v. Parade Place, LLC, No. 12-CV-6299, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013) (citation omitted); see also Olympicorp Int'l LLC v. Farm Rich Foods, LLC, No. 13-CV-4094, 2013 WL 6194238, at *2 (E.D.N.Y. Nov. 25, 2013) (observing that RICO, when "often invoked inappropriately," becomes "a mere saber to be rattled").

### III.    DISCUSSION

#### A.    Plaintiffs Fail to Plead a "Pattern" of Racketeering Activity

Here, because the amended complaint does not establish a pattern of racketeering activity, plaintiffs' RICO claims fail. Although plaintiffs maintain that the amended complaint pleads both closed-ended and open-ended continuity, it fails to plead either adequately.

The amended complaint alleges that the first predicate acts began in January 2022, when defendants allegedly created two fraudulent documents transferring ownership of Bayside and Naon. (Am. Compl. ¶¶ 23, 45.) It is less clear in demarcating when the last alleged predicate act took place, but the last predicate act implicating the defendants appears to have occurred in October 2022, when Ms. Kim learned that G&M had been issuing money belonging to plaintiffs to Double Why and made a written demand on G&M to refrain from any further unauthorized diversion of plaintiffs' escrow funds. (Id. ¶ 31.) As noted in plaintiffs' initial complaint, G&M stopped releasing escrow funds to Double Why after receiving plaintiffs' demand letter in October 2022. (Compl. ¶ 36.)

The ten-month period of alleged racketeering activity from January to October 2022 is far too short to satisfy the Second Circuit's requirement of a "substantial period of time" as a matter of law for a closed-ended pattern. See Spool, 520 F.3d at 184-85 (predicate acts occurring over sixteen-month period insufficient to establish closed-ended continuity); Halvorssen, 2019 WL

7

4023561, at *4, aff'd, 807 F. App'x 26 (2d Cir. 2020) (holding that plaintiff had alleged, at most, a scheme lasting from November 2014 to October 2015, which falls far short of the substantiality requirement in the Second Circuit); Zap Cellular, Inc. v. Kurland, No. 15-CV-682, 2015 WL 8207315, at *8 (E.D.N.Y. 2015) (holding that an alleged RICO enterprise operating for approximately one and a half years did not satisfy the "substantial period" requirement).

In their amended complaint, plaintiffs try to tack on an additional claim that Ms. Kim received a verification form concerning treatment allegedly made in November 2023 by Naon which she did not perform nor authorize. (Am. Compl. ¶ 45.) However, plaintiffs do not allege how this was connected to the defendants or the alleged enterprise in any way. Instead, the record demonstrates that the alleged criminal activity had ceased before the November 2023 receipt of the insurance verification form. Specifically, plaintiffs noted in their original complaint that the bank accounts opened with New Millenium Bank under the names of Naon and Bayside were closed by New Millenium Bank after Ms. Kim reported that they were fraudulent accounts. (Compl. ¶¶ 44-46.) Furthermore, plaintiffs noted that they no longer share an office space with defendants, (Am. Comp. ¶¶ 4, 5, 37), thereby eliminating the risk of mail theft based on the previously shared office. Additionally, plaintiffs' initial complaint notes that G&M stopped releasing escrow funds to Double Why after receiving plaintiffs' demand letter in October 2022.[5] (Compl. ¶ 36.)

Thus, the Court determines that the specific predicate acts alleged in the complaint took place over a ten-month period, between January 2022 and November 2022; this period falls far short of the substantiality requirement as understood in the Second Circuit, especially given the

---

[5] Defendants also note in their motion to dismiss that Ms. Mangibin, who is accused of fraudulently holding herself out as an owner of plaintiffs pursuant to the allegedly fraudulent transfer agreements, has filed a letter with this Court via counsel stating she is willing to "immediately execute, without condition, a quitclaim of any shares of the Plaintiff[s'] business entity." (Defs.' Br., Ex. D "Defendant Mangibin's Letter.")

8

lack of other factors supporting closed-ended continuity. See, e.g., Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 414 (S.D.N.Y. 2013) ("Viewed against the body of RICO case law in this District, Plaintiffs' allegations of a scheme involving a small number of victims and participants and spanning a limited time frame do not satisfy the requirement of closed-ended continuity."); Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (dismissing for lack of closed-ended continuity where, despite 7-year duration of scheme, "none of the (other) indicia of closed-ended continuity—*i.e.* a large number and variety of predicate acts, a large number of either participants or victims, and the presence of separate schemes" was present).

Similarly, plaintiffs cannot prove open-ended continuity. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Spool, 520 F.3d at 185 (citing Cofacredit, 187 F.3d at 243.) Initially, plaintiffs alleged that the last predicate act occurred in October 2022, when Ms. Kim learned that G&M had been issuing money belonging to plaintiffs to Double Why and made a written demand on G&M to refrain from any further unauthorized diversion of plaintiffs' escrow funds. (Compl. ¶¶ 34-36; Am. Compl. ¶ 31.) In their amended complaint, plaintiffs also allege an open-ended pattern, claiming that "the longevity/continuity requirement of the RICO statue is satisfied because the predicate acts began in January 2022, and appear to be still on-going." (Am. Compl. ¶ 45.) However, plaintiffs do not sufficiently allege a threat of ongoing criminal activity.

As discussed supra, plaintiffs make no allegations concerning the threat of continuing criminal activity apart from the receipt of a single insurance verification form for physical therapy services in November 2023. (Id. ¶ 45.) Plaintiffs do not make any allegations connecting any of the defendants with this insurance claim form, and the record reflects that plaintiffs do not face a

risk of continuing criminal activity, given that: (1) the allegedly fraudulent bank accounts have been closed, (Compl. ¶ 44-46); (2) G&M stopped releasing escrow funds to Double Why after receiving plaintiffs' demand letter, (Id. ¶ 36); (3) plaintiffs no longer share office space with defendants, (Am. Compl. ¶¶ 4, 5, 37); and (4) Ms. Mangibin has filed a letter with this Court via counsel stating she is willing to "immediately execute, without condition, a quitclaim of any shares of the Plaintiff[s'] business entity." (Defs.' Br., Ex. D "Defendant Mangibin's Letter.")

Plaintiffs argue that the defendants "have the ability based on their relationship to continue to defraud Plaintiffs" and that the alleged scheme "can continue so long as Plaintiffs exist, and Defendants are not brought to justice." (Pls.' Opp. at 16-17.) However, plaintiffs' argument is purely speculative in this regard, as the amended complaint alleges a "discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity." JGIAP RH 160 LLC v. CRI Holding Corp., No. 21-CV-02489, 2023 WL 5979125, at *12 (E.D.N.Y. Aug. 16, 2023), report and recommendation adopted, No. 21-CV-02489, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023) (citing Confacredit, 187 F.3d at 244). Speculative allegations as to how long a fraud would continue do not establish open-ended continuity. See One World, LLC v. Onoufriadis, No. 21-CV-374, 2021 WL 4452070, at *3 (2d Cir. 2021) (finding "purely speculative" argument that "nature of the enterprise's course of dealing implies that it would have continued" fraudulent scheme); Grace Int'l Assembly of God, 797 F. App'x 603, 606 (2d Cir. 2019) (rejecting "concluso[ry] and speculative[ ]" allegations about threat of continuing activity); GICC Cap. Corp, 67 F.3d at 466 (rejecting as "entirely speculative" argument that defendant would have continued scheme had plaintiff not commenced litigation).

Finally, "RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims . . . and is inherently terminable." Black v. Ganieva, 619 F. Supp. 3d 309, 346 (S.D.N.Y. June 30, 2022), aff'd, No. 22-CV-1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). Here,

10

the alleged scheme only targeted two victims and is insufficient to establish a pattern for the purposes of RICO. See, e.g., Grace Int'l Assembly of God, 797 F. App'x at 606 ("While Grace attempts to magnify the racketeering scheme by expanding the number of victims and predicate acts, in reality this is one scheme with one clear victim. That is clearly insufficient to establish a pattern for the purposes of RICO."); Spool, 520 F.3d at 186 ("[T]he amended complaint alleges only 'a serious, but discrete and relatively short-lived scheme to defraud a handful of victims,' which is insufficient to establish open-ended continuity.") (quotations omitted); Dempsey v. Sanders, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) ("[C]ourts have held that where a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established.") (collecting cases); id. (no open-ended continuity where "[t]he alleged fraud involved was designed to extract money from the Plaintiff. Given this limited goal, the scheme was inherently terminable.")

Accordingly, the Court grants defendants' motions to dismiss as to plaintiffs' Civil RICO claim.[6]

**B.    The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims**

Since the Court dismissed plaintiffs' RICO claim, which is the sole basis for federal jurisdiction in this case, it declines to exercise supplemental jurisdiction over plaintiffs' remaining state and common law causes of action. See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (citation omitted). Those claims are therefore dismissed without prejudice.

---

[6] While only Defendants Double Why, Mr. Youn, and Ms. Mangibin filed motions to dismiss the amended complaint, the civil RICO claim is dismissed as to all defendants given that there are insufficient allegations to support such a claim and because these defendants were the essential participants of the alleged scheme.

11

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED and this action is DISMISSED. The Clerk is directed to enter judgment dismissing plaintiffs' RICO claim with prejudice and their state law claims without prejudice.

**SO ORDERED.**

Dated:  February 11, 2025
        Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE